David H. Madden
Mersenne Law
9600 S.W. Oak Street
Suite 500
Tigard, Oregon 97223
(503) 679-1671
ecf@mersenne.com

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CRIMINAL PRODUCTIONS, INC.**<br>*Plaintiff*<br><br>v.<br><br>**Ralph Ghassan BEKAHI**<br>*Defendant* | Civil Action No.:...................3:17-cv-157-AC<br><br>DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT [dkt #9]<br><br>JURY TRIAL DEMANDED |

Defendant Ralph Ghassan BEKAHI responds to Plaintiff CRIMINAL PRODUCTIONS INC.'s First Amended Complaint by admitting, denying, and alleging as follows. To the extent that any allegation of Plaintiff is not fully and completely answered, Defendant DENIES such allegation.

1. Defendant admits that this is a civil action alleging copyright infringement under 17 U.S.C. §§ 101 *et seq*. He denies that Plaintiff is entitled to any relief against him or against any other individual or entity.

2. Defendant acknowledges that Plaintiff has been proceeding according to its interpretation of Standing Order 2018-8.

3. Defendant admits that this Court has subject matter jurisdiction.

4.      Defendant admits that venue is proper in this Court of this District.

5.      Defendant lacks information to admit or deny Plaintiff's allegations concerning its corporate form, affiliation, and business activities, and consequently denies these allegations.

6.      Defendant lacks information to admit or deny Plaintiff's allegations concerning the release date and distribution channels of the movie in suit, *Criminal*, and consequently denies these allegations.

7.      Defendant lacks information to admit or deny Plaintiff's allegations concerning the plot of *Criminal*. Defendant has never seen this movie and was unaware of its existence prior to his involvement in this lawsuit. Consequently, Defendant denies these allegations.

8.      Defendant lacks information to admit or deny Plaintiff's allegations concerning the proper registration and protection allegedly enjoyed by *Criminal*, and consequently denies these allegations.

9.      Upon information and belief, CPI is not a proprietor of the copyrights and related interests necessary to establish its standing in this matter. Defendant denies that Plaintiff may properly pursue infringement allegations in this suit or in any of its other actions.

10.     Defendant lacks information to admit or deny Plaintiff's allegations concerning the content of the motion picture, and consequently denies that *Criminal* comprises copyrightable subject matter.

11.     Defendant lacks information to admit or deny Plaintiff's allegations concerning the movie's commercial availability and current theater run, and consequently denies these allegations.

12.     Defendant denies having any knowledge of the movie or notice of Plaintiff's purported rights.

13.    Defendant lacks information to admit or deny Plaintiff's general allegations about alleged infringement activity concerning *Criminal*.  He denies knowing of or participating in any such activity.

14.    Defendant admits that his name is Ralph BEKAHI, and that he lives in Fairview, Oregon. He denies any alleged "confirmation" beyond those admitted facts.

15.    Defendant denies distributing *Criminal*.  Plaintiff could not have "observed" or "confirmed" activity that Defendant never undertook.

16.    Defendant denies any association with peer-to-peer exchange of any movies whatsoever. He did not download or distribute *Max Steel*, *Septembers of Shiraz*, *I.T.*, *Sniper: Special Ops*, *London Has Fallen*, *Pay The Ghost*, or any other movie using a BitTorrent network.

17.    Defendant denies receiving any DMCA Notices.  Upon information and belief, Plaintiff sent no such notices to Defendant.

18.    Defendant accessed a website at a domain name comprising the word VODLY.  He lacks information to admit or deny any characterization of that publicly-available website.

19.    Defendant lacks information to admit or deny Plaintiff's allegations regarding the website whose domain name includes the word VODLY.  He notes that the website has not been blocked in the United States, despite its alleged criminal notoriety.

20.    Defendant is not associated with or responsible for the VODLY website.  The allegations of paragraph 20 are denied as irrelevant to the present matter and properly stricken under Fed. R. Civ. P. 12(f).

21.    Defendant is not associated with or responsible for the VODLY website.  The allegations of paragraph 21 are denied as irrelevant to the present matter.  If VODLY is responsible for infringing

Plaintiff's alleged copyright, Plaintiff's proper recourse is an action against VODLY, not against a non-infringer.

22.     Defendant is not associated with or responsible for the VODLY website.  The allegations of paragraph 22 are denied as irrelevant to the present matter.

23.     Defendant is not associated with or responsible for the VODLY website.  The allegations of paragraph 23 are denied as irrelevant to the present matter.

24.     Paragraph 24 does not make any allegations about Defendant, Defendant's knowledge, or Defendant's actions.  Defendant did not access *Criminal* through the VODLY website.  Defendant did not access, download or distribute *Criminal* at all.  Paragraph 24 is denied as irrelevant to the present matter.

25–29.  These paragraphs do not make any allegations about Defendant, Defendant's knowledge or Defendant's actions.  They merely purport to describe technical details and legal implications of a general-purpose computer protocol.  **They are technically and legally inaccurate**, and Defendant denies each and every one on those bases.

30.     **Defendant denies making Plaintiff's motion picture available to others using BitTorrent**.

31–32.  These paragraphs do not make any allegations about Defendant, Defendant's knowledge or Defendants actions.  They contain inaccurate assertions and unfounded speculation.  Defendant denies each and every one on those bases.

33.     Defendant denies participating in any BitTorrent exchange of any computer data whatsoever.  The allegations of paragraph 33 are denied.

34.     Defendant did not participate in any BitTorrent activity and received no compensation of any sort for such alleged participation.  The allegations of paragraph 34 are denied.

35. Paragraph 35 makes no allegations about Defendant, Defendant's knowledge or Defendant's actions. It contains irrelevant speculation and immaterial puffery, and is denied on those bases.

36. Defendant is not a user of BitTorrent at all, and denies being a "prolific proponent" thereof.

37–43. These paragraphs make no allegations about Defendant, Defendant's knowledge or Defendant's actions. They contain no material to which Defendant must or may respond. They are denied as immaterial, misleading and for wasting time.

44. Defendant repeats and restates all foregoing admissions, denials and responses.

45. Defendant denies copying and distributing Plaintiff's motion picture through a public BitTorrent network or through any other means or instrumentality. Defendant did not download *Criminal*. Defendant did not copy *Criminal*. Defendant did not distribute *Criminal*. Defendant did not even watch *Criminal*.

46. Defendant denies infringing Plaintiff's purported rights in the movie *Criminal*. Defendant denies that Plaintiff possesses any such rights that could be infringed by the actions alleged.

47. Defendant repeats his denials of paragraphs 45 and 46.

48. Defendant denies that Plaintiff possesses any rights under 17 U.S.C. § 106 that could have been infringed by the actions alleged herein. Defendant did not infringe any such rights by any act or omission.

49. Defendant denies that Plaintiff is entitled to damages from him, for any act or omission, on any basis whatsoever.

50. Defendant has never engaged in any conduct in derogation of Plaintiff's purported rights, is not now engaging in such conduct, and will not in the future engage in such conduct.

51.     Plaintiff is not entitled to any relief whatsoever, whether legal or equitable, from Defendant, on any statutory or common-law basis.

## Defendant's Allegations

52.     Copyright trolling is a litigation scheme that has been perpetrated upon Internet users – both those who may be guilty of copyright infringement and those who (like Defendant) are **not** – for several years.  This scheme harasses and oppresses Internet users, denies them practical recourse to the courts, lowers the public's opinion of lawyers, deprives courts of fees properly owed, and brings disrespect upon the judicial system.

53.     The litigation scheme starts with a computer and network "investigation" firm, which participates in BitTorrent "swarms" by uploading and downloading movies in order to collect computer addresses ("Internet Protocol" or "IP" addresses).

54.     Due to the technical details of BitTorrent swarm participation, the investigator must – at a *minimum* – represent to other participating computers that it is willing and able to send and receive portions of the relevant data file (which, according to the scheme, is typically a motion picture).

55.     Due to the technical details of the BitTorrent protocol, it is overwhelmingly likely that the investigator is not just a participant in the infringing activity, but that the investigator *initiates* the swarms that wishes to monitor.

56.     The most prolific investigator used in U.S. copyright-troll cases is a German entity that goes by several different names.  "MaverickEye" is one commonly-used alias.

57.     Upon information and belief, a foreign entity (and in particular, a *German* entity) is used in this role in the scheme because it is virtually impossible to serve process upon the entity, its principals, and any percipient witnesses.  Consequently, the original source of the purported

evidence upon which the U.S. court cases are founded is concealed from those courts and any affected litigants.

58.     IP addresses collected under these questionable circumstances are sold to U.S. attorneys, who file "copyright troll" suits in an appropriate jurisdiction.

59.     Upon information and belief, the remarkable similarity between filings made on behalf of a wide range of purported copyright plaintiffs is due to the common development of these papers and their provision with the purported evidence to plaintiff's attorneys, who merely follow a common litigation playbook provided to them.

60.     According to this playbook, and as Plaintiff has done here and in at least 74 other indistinguishable cases filed since April 2016, allegations are presented that one or more unidentified Does infringed Plaintiff's purported copyrights in the movie *Criminal*.

61.     Early discovery is sought to identify the Internet subscribers associated with the IP addresses purchased from the German investigator, and Courts typically grant such early discovery.  In Oregon, under Standing Order 2016-8, Plaintiff need not even seek leave to issue this first round of subpoenas – the Court has granted blanket authority to the private attorney to do so.

62.     After receiving the responses to these subpoenas, Plaintiff usually sends demand letters, seeking payment of several thousand dollars to avoid even-more expensive and risky litigation. Note that the **only** connection between the alleged infringement and the individuals receiving these letters is that **those individuals pay an Internet Service Provider's bill for service**.  There are no facts alleged (let alone supported by evidence or proven) that the bill-payer is the infringer.

63.     In Oregon, the bill-payer is usually ordered to appear for Plaintiff's second round of early discovery, ostensibly to determine whether the bill-payer is the proper defendant.  However, the

subscriber is almost invariably named as the defendant, regardless of his testimony during the deposition.

64.     In the present case, during this second-round early discovery deposition, Defendant was not asked a single question about BitTorrent. He testified that he was out of town or out of state during many of the periods when Plaintiff insinuated that BitTorrent activity had been observed, and he denied ever watching *Criminal* on a non-BitTorrent software service (conduct which, in any event, Defendant does not stand accused of). Nevertheless, Plaintiff substituted Defendant's name for the Doe infringer.

65.     Plaintiff, after two rounds of Court-sanctioned early discovery, had no reasonable basis to name BEKAHI as the defendant responsible for the infringement alleged in the present action.

66.     Upon information and belief, Plaintiff named Defendant for the sole purpose of increasing its leverage to extract a settlement payment from Defendant.

67.     Defendant's then-attorney attempted in good faith to negotiate a settlement with Plaintiff, but was unable to do so because of Plaintiff's unreasonable and baseless demands.

68.     Upon information and belief, Plaintiff's attorneys in this and other jurisdictions negotiate in similar bad faith with Internet subscribers identified through their early discovery.

69.     Upon information and belief, Plaintiff has no evidence to establish that Defendant infringed its purported rights by downloading or distributing *Criminal* through a BitTorrent network.

70.     Upon information and belief, Plaintiff has no evidence to establish that any other individual targeted by the litigation scheme described herein infringed its purported rights by downloading or distributing *Criminal* through a BitTorrent network.

71. Upon information and belief, Plaintiff has alienated all rights in *Criminal* that would have been infringed by the alleged downloading or distribution of *Criminal* through a BitTorrent network.

72. Upon information and belief, all settlement agreements entered into between Plaintiff and any individual named or threatened with naming in any CRIMINAL PRODUCTIONS INC. suit are void for failure of consideration, in that Plaintiff lacks the rights it purports to enforce and consequently it cannot convey a valid release of liability for the alleged infringement.

73. In this jurisdiction and other jurisdictions, Plaintiff engages in unethical and abusive litigation practices by, *inter alia*, making false and misleading statements to individuals, opposing parties and the courts before which it appears.

74. Plaintiff has presented at least one Proposed Order with a motion it filed in a District Court, where the Proposed Order is at substantial and material variance from the relief requested and described in the motion. This is a clear attempt to trick the Court into acting in error.

75. Upon information and belief, discovery concerning parallel cases brought by Plaintiff will show additional instances of material misrepresentations to District Courts across the United States, including in the District of Oregon.

76. Because Plaintiff lacks the copyrights it purports to enforce here, the true owner of the copyrights may bring a separate action against Defendant, notwithstanding his sworn testimony that he is not responsible for any alleged downloading, copying and/or distribution.

77. Defendant has a real and credible fear that Plaintiff or another entity claiming rights in the movie *Criminal* will commence another action against him for the same misconduct.

78. To guard against this possibility, Defendant seeks discovery into the investigation upon which basis Plaintiff advanced its present allegations. Upon information and belief, this evidence

will clearly show that Defendant did not commit the infringement complained of in this matter, and further, that Defendant *could not have committed* any such infringement.

### AFFIRMATIVE DEFENSES

79. Plaintiff CRIMINAL PRODUCTIONS INC. does not possess any exclusive right in respect of the motion picture *Criminal*. Consequently, its suit is without merit as to any defendant.

80. Plaintiff CRIMINAL PRODUCTIONS INC. and/or its authorized agents participated in BitTorrent swarms, and so any download committed by any defendant was from a source authorized to permit such download. Consequently, any exercise by any defendant of an exclusive right protected by the Copyright Act was with the consent of an authorized party and not in derogation of any exclusive right.

81. Any downloading or uploading of the copyrighted work was permitted by the doctrine of fair use.

82. Any downloading or uploading of the copyrighted work was no more than a *de minimis* act.

83. Any downloading or uploading of less than all of the copyrighted work results in a non-functional copy (i.e., a partial copy that cannot under any circumstances be used to infringe any of plaintiff's purported exclusive rights.) Therefore, no infringement of Plaintiff's rights has occurred or can occur.

84. Any partial copy of the copyrighted work is overwhelmingly likely to lack a proper copyright notice. In the absence of such notice, Plaintiff's asserted enhanced damages are not available.

85. The infringement of Plaintiff's purported rights that allegedly occurred through the concerted, common and conspiratorial action of individuals participating in a BitTorrent swarm

constituted a single instance of infringement for which Plaintiff can only recover a single statutory damage award. Upon information and belief, Plaintiff has been made whole by one or more settling individuals. Any further recovery would be in excess of statutory limits and of actual damages.

### Counterclaim 1: Declaratory Judgment of Non-Infringement

86. Defendant BEKAHI repeats and realleges each and every one of paragraphs 1 through 85.

87. There is an actual controversy now existing between Plaintiff and BEKAHI. Plaintiff has filed a suit alleging copyright infringement and has named BEKAHI as the party who is allegedly responsible therefor.

88. Plaintiff regularly dismisses (or attempts to dismiss) its actions without prejudice. Defendant believes that Plaintiff will attempt to dismiss this action without prejudice.

89. BEKAHI has an objectively-reasonable apprehension of becoming the target of additional suits by this plaintiff or other by purported rightsholders claiming to own rights in the movie *Criminal.*

90. The only way Defendant can put a full and final end to such baseless allegations and their attendant inconvenience and expense, is to obtain a declaration of non-infringement based on one or more of the following facts that the District Court could find: 1) Plaintiff does not own the rights it seeks to enforce; 2) Defendant did not infringe any right under § 106 by any act or omission; or 3) Defendant does not own, operate or control any computer device which is capable of performing the infringing activity as alleged.

91. This Court has original and exclusive jurisdiction of copyright infringement matters pursuant to 28 U.S.C. § 1338.

92.     Mere dismissal of this lawsuit (with or without prejudice) is inadequate to vindicate Defendant's rights.  BEKAHI is entitled to a declaration of non-infringement, as well as his costs and attorney fees as prevailing party in a copyright case, pursuant to 17 U.S.C. § 505.

## Prayer for Relief

Wherefore, Defendant Ralph Ghassan BEKAHI prays for judgment against Plaintiff CRIMINAL PRODUCTIONS, INC., as follows:

A. A determination that Plaintiff knowingly, willfully and in bad faith instituted and pursued a meritless copyright infringement action against Defendant for the purpose of extorting a "settlement" payment to which it was not entitled;

B. A determination that Plaintiff has no rights in the motion picture *Criminal* that could be infringed by sending, receiving, copying, uploading, downloading or otherwise transferring data representing the motion picture over the Internet using BitTorrent or any other Internet communication protocol;

C. A declaration that Defendant did not infringe Plaintiff's purported rights by any act or omission associated with the motion picture *Criminal*;

D. Entry of an injunction prohibiting Plaintiff from engaging in its sham litigation campaign in this District or in any other jurisdiction in the United States;

E. An Order requiring Plaintiff to account for all judgments, awards, settlement payments and other amounts obtained through its illegitimate litigation activities and to restore all such amounts to the individuals and entities from which they were wrongfully taken;

F. An award of Defendant's reasonable costs and attorney fees pursuant to one or more of 17 U.S.C. § 505, Fed. R. Civ. P. 11 and the Court's inherent authority to control litigants before it and to sanction objectionable conduct; and

G. For such other and further relief as the Court deems proper.

Respectfully submitted,

| Date | David H. Madden, SBN OR080396 |
|---|---|
| | Attorney for Defendant BEKAHI |
| | Mersenne Law |
| | 9600 S.W. Oak Street |
| | Suite 500 |
| | Tigard, Oregon 97223 |
| | dhm@mersenne.com |
| | (503)679-1671 |